SHAWN AVERY ANDERSON,
        **Plaintiff,**

v.                                         Case No. 20-C-562

JIM CIESZYNSKI, et al.,
        **Defendants.**

## ORDER

Plaintiff Shawn Avery Anderson, a Wisconsin state prisoner representing himself, filed this lawsuit under 42 U.S.C. § 1983. I screened the plaintiff's second amended complaint and permitted him to proceed on claims under the First Amendment and RLUIPA. ECF No. 18. The defendants move for partial summary judgment on the ground that the plaintiff failed to exhaust his available administrative remedies for one of his claims against defendant Tami Staehler. ECF No. 61. The plaintiff opposes the motion, which is fully briefed and ready for this decision. I will **GRANT** the defendant's motion.

### I. BACKGROUND[1]

### A. The Screening Orders

The plaintiff filed his complaint on April 6, 2020. ECF No. 1. I screened the complaint, concluded that the plaintiff failed to explain who violated his rights, and granted

---

[1] Facts in this section are taken from the parties' proposed findings of fact, declarations in support, and responses to the opposing parties' proposed facts. ECF Nos. 63–64, 67, 70, & 73. Because the plaintiff failed to dispute the defendants' proposed findings of fact, I consider those facts admitted for purposes of this decision. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I consider the parties' proposed facts only to the extent they are supported by evidence in the record, *see* Fed. R. Civ. P. 56(c)(1), and consider arguments in the supporting memoranda only to the extent they properly refer to supported facts, *see* Civil L. R. 56(b)(6).

him leave to submit an amended complaint. ECF No. 8. The plaintiff timely submitted an amended complaint. ECF No. 11. I screened the amended complaint and allowed the plaintiff to proceed on several claims, including "a First Amendment claim against Staehler in her individual capacity for failing to accommodate his religious fast." ECF No. 12 at 12. Specifically, the plaintiff alleged that between April and December 2019, he began his religious fast but was forced to break it after about three months because he was losing weight. *Id.* at 3–4.

About a month later, the plaintiff moved for leave to amend his complaint a second time. ECF No. 16. I granted that motion and screened the second amended complaint. ECF No. 18. I recounted the claims on which I previously allowed the plaintiff to proceed, including the claim against Staehler about his religious fast, noted that the plaintiff "reiterate[d] his allegations related to those claims," and concluded that "the plaintiff still may proceed on the four claims identified in the previous order." *Id.* at 2. I then reviewed his second amended complaint, which alleged, in part, that the plaintiff began his fast in April 2019 before the prison had ruled on his request for assistance. *Id.* at 4. He further complained that, once his fast was approved in December 2019, the prison did not provide him a proper individualized meal plan. *Id.* He alleged that the differences between the meal plan he was given and the one he requested forced him to compromise his religious beliefs. *Id.* I concluded that the additional allegations in the second amended complaint showed he "did not receive special treatment when he failed to follow prison rules." *Id.* at 8. I did not allow the plaintiff to proceed on a claim "related to his religious fast before December 2019" because he had not waited for the prison to approve his fast. *Id.* I further concluded that "[b]ecause the plaintiff sufficiently alleges Staehler did not accommodate

his fast *after* it was approved in December 2019, he still may proceed on this claim against her." *Id.* (emphasis in original). In summarizing the claims on which I was allowing the plaintiff to proceed, I described this claim as "a First Amendment claim against Staehler in her individual capacity for failing to accommodate his religious fast." *Id.* at 11.

**B. Plaintiff's Administrative Complaint**

On May 11, 2021, I entered a scheduling order requiring the defendants to move for summary judgment on exhaustion grounds by June 25, 2021, and on the merits by November 10, 2021. ECF No. 40 at 1–2. During a status conference on May 26, 2021, I stayed the defendants' deadline for moving for summary judgment on exhaustion grounds while the parties discussed a possible settlement. ECF No. 47. Nonetheless, on July 27, 2021, the defendants moved for summary judgment on exhaustion grounds. ECF No. 61. The motion is therefore timely.

The defendants assert that the plaintiff failed to exhaust his administrative remedies for his claim regarding his religious fasting. ECF No. 62 at 1. In his second amended complaint, the plaintiff alleged that he requested an accommodation to fast from April 1, 2019, to April 1, 2020. ECF No. 19, ¶ 55. He alleged he submitted the proper form but proceeded to fast before receiving a response to his request. *Id.*, ¶¶ 58–59. He later again requested institutional support for his fasting, which defendant Tami Staehler allegedly denied. *Id.*, ¶¶ 60–61. The plaintiff alleges he had to end his fast in July 2019 because he was losing weight, but in December 2019 he began a new fast after the prison approved his request for an accommodation. *Id.*, ¶¶ 62–64, 67, 71. The plaintiff was dissatisfied with the prison's accommodations, which followed Ramadan practices and not Pagan ones. *Id.*, ¶¶ 73–77. Although in late December 2019 Staehler approved the

3

Case 2:20-cv-00562-LA   Filed 09/29/21   Page 3 of 10   Document 78

plaintiff's request to eat all his meals at one time, the plaintiff still filed a complaint about the Ramadan meal plan. *Id.*, ¶¶ 80–81. I allowed the plaintiff to proceed on this claim against Staehler but not against the Warden. ECF No. 18 at 8.

The plaintiff filed one inmate complaint about his meal plan, which was dated March 5, 2020, and received by the Institution Complaint Examiner's office on March 9, 2020. ECF No. 63, ¶ 4. The complaint alleges that although the plaintiff was approved for an individualized meal plan for his religious preferences, Staehler told him "that all fasts are the same meal." *Id.*; ECF No. 64-2 at 10. He complains: "You can not have a 'one meal for all' when it comes to Religious observances and dietary needs/Restriction." ECF No. 63, ¶ 4; ECF No. 64-2 at 10. The complaint asserts that the "10 day time limit is non-applicable as offense is still occurring." ECF No. 63, ¶ 4; ECF No. 64-2 at 10.

An inmate complaint examiner (ICE) contacted Staehler about the complaint. ECF No. 63, ¶ 6; ECF No. 64-2 at 2. Staehler told the ICE she had spoken with the plaintiff and explained the same menu was provided for all fasting inmates unless a specific food item had to be removed for that inmate's fast. ECF No. 63, ¶ 6; ECF No. 64-2 at 2. The plaintiff's fasting plan was renamed, and the ICE recommended dismissing his complaint. ECF No. 63, ¶ 6; ECF No. 64-2 at 2. The Warden dismissed the plaintiff's inmate complaint on March 16, 2020. ECF No. 63, ¶ 7; ECF No. 64-2 at 3.

On March 19, 2020, the plaintiff appealed the dismissal of his complaint. ECF No. 63, ¶ 8; ECF No. 64-2 at 13. He reiterated that he was given a Ramadan meal plan instead of the individualized meal plan for which he was approved. ECF No. 63, ¶ 8; ECF No. 64-2 at 13. A corrections complaint examiner (CCE) recommended dismissing the appeal because the menu used to craft the plaintiff's fasting plan was just a guide and "is

not strictly a 'Ramadan fast plan.'" ECF No. 63, ¶ 9; ECF No. 64-2 at 5. On April 7, 2020, the Office of the Secretary issued a final decision accepting the CCE's recommendation and dismissing the plaintiff's appeal. ECF No. 63, ¶ 10; ECF No. 64-2 at 6. The plaintiff did not file any other complaints about his religious fasting. ECF No. 63, ¶ 11; ECF No. 64-1. The court received the plaintiff's § 1983 complaint on April 6, 2020, though he signed it on April 1, 2020. ECF No. 1.

## II. ANALYSIS

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, to survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### B. Exhaustion

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, I must dismiss the plaintiff's claim. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy exhaustion requirements. *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System (ICRS) to allow inmates to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code § DOC 310.06. Inmates must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. *Id.* § DOC

6

310.05. Before filing a formal complaint, an inmate must first attempt to resolve the issue informally within his institution. *Id.* § DOC 310.07(1). If the issue is not resolved, the inmate must then file a complaint with the ICE within fourteen calendar days of the incident. *See id.* § DOC 310.07(2). The inmate must appeal any adverse decision within fourteen days of the ICE's decision and await a final decision from the Office of the DOC Secretary. *Id.* §§ DOC 310.12 & 310.13.

**C.     Discussion**

Section 1997e(a) requires prisoners to exhaust all available administrative remedies *before* the prisoner may bring suit in federal court. In other words, administrative exhaustion is "a precondition to *suit*," not to a judgment in that suit. *Perez*, 182 F.3d at 534–35. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Id.* at 535. The plaintiff brought his suit in this court on April 6, 2020. ECF No. 1. His administrative remedies were exhausted the next day, April 7, 2020. Although that difference in time is only one day, the plaintiff's hasty filing prevents me from ruling on the merits of his then-unexhausted claim regarding his religious fast. *See Henry v. Deshler*, No. 20-2185, 2021 WL 2838400, at *2 (7th Cir. July 8, 2021) (citing *Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020)) (noting that the exhaustion requirement "applies to each claim" in a prisoner's lawsuit).

The plaintiff insists that he previously exhausted a claim about his religious fast in June 2019 and received relief. ECF No. 67, ¶¶ 4–5. He cites a letter from a CCE dated June 13, 2019, which returned a letter the plaintiff had sent for a response. ECF No. 67-1

7

Case 2:20-cv-00562-LA     Filed 09/29/21     Page 7 of 10     Document 78

at 7. The letter notes that there is no record of the plaintiff "having filed a complaint regarding the religious diet or fasting" and instructs the plaintiff to use the ICRS for this complaint. *Id.* The plaintiff also attached a letter from Staehler dated December 27, 2019. *Id.* at 8. In the letter, Staehler provides an "[u]pdate from conversation on Thursday December 26, 2019," telling the plaintiff he will be allowed to receive both of his meal bags after sunset. *Id.* The plaintiff asserts that Staehler's letter shows the earlier conversation "did in fact initiate the ICRS." ECF No. 67, ¶ 5. He contends that because he received the relief he sought from his conversation with Staehler, he did not need to further appeal this claim and fully exhausted his administrative remedies for it. *Id.*

There are two problems with this argument. First, the plaintiff attempts to revive a claim related to his religious fasting before December 2019. Even if the plaintiff raised a claim at that time about his fast, and even if he exhausted his administrative remedies for that claim, I did not allow him to proceed on a claim related to his fast before December 2019 in this lawsuit. ECF No. 18 at 8. I allowed him only to proceed on a claim related to his fast "*after* it was approved in December 2019." *Id.*

Regarding that claim, the plaintiff incorrectly attempts to make two claims out of one. He insists that the December 2019 letter from Staehler relates to a claim about "the time of the meals," and he exhausted his administrative remedies for that claim. ECF No. 67 ¶ 5. But the issue that both the letter and the March 2020 inmate complaint address are one and the same: the prison's accommodation of his religious fast. The December 27, 2019 letter shows that Staehler shows approved his request to receive his meal bags after sunset. But his March 5, 2020 inmate complaint shows he was dissatisfied with Staehler's solution and sought additional review of the prison's

8

accommodation. His inmate complaint confirms he saw these problems as a single, continuing one. The plaintiff lists the date of incident as "12/2019 – 3/2020," wrote that he attempted to resolve the issue by speaking with Staehler, and states that the "offense is still occurring." ECF No. 64-2 at 10. Whether about the timing or the content of his meals, the plaintiff's dissatisfaction with the prison's accommodation of his fast is one and the same claim, and it is the only claim related to his religious fast on which I allowed him to proceed in this lawsuit.

It is undisputed that the plaintiff brought his initial § 1983 complaint before the prison concluded its administrative review of his only inmate complaint related to his religious fast. Whether his fast ended before or after he brought this lawsuit is irrelevant. What matters is whether the prison concluded its administrative review of the plaintiff's inmate complaint about his fast before he brought a federal lawsuit; it had not. Therefore, the plaintiff failed to exhaust his administrative remedies before bringing this suit as § 1997e(a) requires.[2]

Because I conclude that the plaintiff filed this lawsuit before his administrative remedies concluded, I need not address the defendant's alternative argument about the content of the plaintiff's inmate complaint. The defendants have met their burden to show that the plaintiff failed to exhaust his administrative remedies for his claim related to his religious fast before bringing this lawsuit. I therefore must dismiss the unexhausted claim

---

[2] The plaintiff alternatively asserts that he did not need to wait for the decision from the Office of the Secretary because his fast had ended, so there was no relief the prison could provide. ECF No. 71 at 3–4. That is incorrect. There is no futility exception to exhaustion; rather, "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth*, 532 U.S. at 741 n.6; *see Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001).

without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").[3] [4]

### III. CONCLUSION

For the above reasons, **IT IS ORDERED** that the defendants' motion for partial summary judgment on exhaustion grounds (ECF No. 61) is **GRANTED**. The plaintiff's First Amendment claim that defendant Staehler failed to accommodate his religious fast is **DISMISSED WITHOUT PREJUDICE**. The remaining claims shall proceed according to the previously entered schedule.

Dated at Milwaukee, Wisconsin this 29th day of September, 2021.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge

---

[3] The plaintiff contends that, even if I conclude that he failed to exhaust his administrative remedies for this claim, "there is still a genuine issue of material fact and law." ECF No. 70, ¶ 8. But because the plaintiff failed to exhaust his administrative remedies, I may not reach the merits of this claim. *See Perez*, 182 F.3d at 536 (noting that where the defendants raise the issue of exhaustion, a district court "must not proceed to render a substantive decision until it has first considered § 1997e(a)").

[4] Because there are no unresolved questions of fact, I need not hold a hearing as described in *Pavey*, 544 F.3d at 742. *See Aguirre v. Witek*, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (citing *Doss v. Gilkey,* 649 F.Supp.2d 905, 912 (S.D. Ill. 2009)).